Alan G. HEVESI and Hevesi '93, Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY, New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, and Transportation Displays Incorporated, Defendants.

No. 93 CV 5058 (KMW).

United States District Court, S.D. New York.

Aug. 18, 1993.

Daniel R. Bright Braunschweig, Rachlis, Fishman & Raymond, P.C., New York City, for plaintiffs.

Anthony P. Semancik, Sr. Gen. Counsel, Robert Bergen, Gen. Counsel, Metropolitan Transp. Authority, Kathryn Keneally, Kostelanetz, Ritholz, Tigue & Fink, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiffs, a political candidate for the office of New York City Comptroller and the committee working to achieve his election, seek a preliminary injunction to require defendants to abandon defendant Transportation Displays Incorporated's ("TDI") two-tier pricing system for selling advertising space on New York City buses. TDI's policy treats candidates seeking political office differently from all others prospective buyers of advertising space. Although TDI will negotiate with non-candidates and will often give them discounts off the applicable "rate card" prices [1] for advertising space, concerns over charges of favoritism have prompted TDI to refuse to negotiate over price with political candidates. Consequently, unlike other advertisers, candidates must always pay the applicable rate card prices for advertising space bought from TDI. Plaintiffs assert that this content-based distinction between political speakers and commercial speakers violates their First and Fourteenth Amendment rights. Because plaintiffs have failed to demonstrate either a risk of irreparable harm or a likelihood of success on the merits, I deny their motion for a preliminary injunction.

## DISCUSSION

A party seeking a preliminary injunction must show (1) a risk of irreparable

---

**1.** The "rate card" is a pricing chart that lists prices for advertising space based on the number of units and length of time the advertiser orders. For example, the per-unit rate card price for an advertiser who orders 150 units for twelve months is substantially less than the per-unit rate card price for an advertiser who orders one unit for one to five months.

harm if the injunction is denied, and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping in the movant's favor. *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988). Where, however, as here, a preliminary injunction will give the movant essentially all the relief he seeks, the Second Circuit applies "a somewhat higher standard." As the Court explained in *Johnson v. Kay*, the moving party in such a case "must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success." *Id.* (emphasis supplied).

## A. Irreparable Harm

■ In this case, plaintiffs have *not shown* that they risk irreparable harm if I deny the motion for a preliminary injunction. Despite conducting discovery, they have not demonstrated that even if they were treated like all other advertisers, they would have any likelihood of succeeding in negotiating a discount off the rate card price. Plaintiffs' evidence consists of (1) the general statement in Mr. Morris' affidavit that negotiating discounts is the rule in advertising, (2) evidence that plaintiffs received discounts when plaintiffs purchased subway advertising space, and (3) undisputed evidence that although TDI generally is open to negotiating prices with commercial advertisers, it flatly refuses to negotiate discounts off the rate card price for political campaigns.

Defendants, however, provided affidavit evidence that although TDI does negotiate with many of its clients, it does not generally give a discount to commercial advertisers with plaintiffs' advertising profile—that is, advertisers who seek space only on the exterior of New York City buses, for a short period of time, on short notice, and do not either hold the promise of repeat business or seek space in other localities or other media. In support of this assertion, defendants have brought to the Court's attention over twenty advertisers who have paid undiscounted rate card prices within the last year for advertising of the type (on the exterior of buses and not linked to advertising space in another

location or medium), period of time, and volume of space plaintiffs now seek. *See* Second Affidavit of Christopher Culver ¶¶ 8, 10. Thus, although plaintiffs maintain that negotiation is the rule, they offer what amounts only to speculation about the effects of negotiation on the price *they would receive;* they point to no commercial advertiser with plaintiffs' profile who received more favorable treatment than plaintiffs. In short, because plaintiffs have failed to offer the Court any basis from which to conclude that they are likely to receive a discount in the absence of TDI's current pricing policy, I cannot make the requisite finding of irreparable harm to support a preliminary injunction.

## B. Likelihood of Success on the Merits

Those same reasons also preclude me from concluding that plaintiffs are likely to succeed on the merits of their case. Not only have plaintiffs failed to show that they are likely to succeed in themselves winning a discount, but they have also not convinced the Court that they are likely to show that TDI's pricing policy as it generally applies to advertising on the exterior of New York City buses offends the First Amendment.

■ I first note that I do agree with the plaintiffs that they are likely to succeed in demonstrating that the Metropolitan Transit Authority and its subsidiaries ("MTA") have made advertising spaces on New York City buses designated public fora for the purposes of both commercial and political advertising. Unlike the municipality in *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), which "consciously [ ] limited access to its transit system advertising space," *id.* at 304, 94 S.Ct. at 2718, MTA and its agents have actively promoted the bus system as an advertising medium, and have displayed a wide variety of commercial and political messages as advertising. *See Penthouse International, Ltd. v. Koch*, 599 F.Supp. 1338, 1346–47 (S.D.N.Y.1984). *See also Lebron v. Washington Metropolitan Area Transit Auth.*, 749 F.2d 893, 896 n. 6 (D.C.Cir.1984) (distinguishing *Lehman* on basis that transit authority "by accepting political advertising, has made its subway stations into public fora"). Moreover, plain-

tiffs will almost surely succeed in demonstrating that, by treating political candidates' proposed advertising differently from other advertising, TDI's pricing policy discriminates on the basis of the proposed speech's content. *See Matthews v. Town of Needham,* 764 F.2d 58, 60 (1st Cir.1985) (Town bylaw that treats political speech differently from commercial speech is content-based restriction). Consequently, as with all content-based regulations of speech, the discriminatory pricing system may survive only if it is "narrowly drawn to effectuate a compelling state interest." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 47, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983).

An examination of the evidence thus far provided to the Court concerning TDI's pricing practices supports the view that TDI's restrictions are narrowly drawn to effectuate a compelling state interest; they ensure that those who control access to this designated public forum do not discriminate among political candidates. As mentioned, TDI has provided the Court with uncontested evidence that it generally does not provide discounts to commercial advertisers with the advertising profile held by plaintiffs and by most political candidates seeking bus advertising space—that is, advertisers who order space only on the exterior of New York City buses, on short notice, for a short period of time, unconnected to advertising in other localities or media, and do not hold the promise of extended or repeat advertising business. Only when TDI's subjective assessment suggests that a particular commercial advertiser is likely in the future either to generate a large volume of business or to seek space in other localities or media, is TDI likely to give discounts to those who purchase on short notice for short periods of time. Plaintiffs have not proffered any evidence casting doubt on TDI's assertions; they have failed to cite even one advertiser with plaintiffs' advertising profile who did receive a discount from TDI.

In light of these facts, forcing TDI to bargain with political candidates in the same manner as they do with commercial advertisers could leave defendants open to serious charges of favoritism. Imagine, for example, if TDI charged Primary Candidate A at a lesser rate than Primary Candidate B, because Candidate A has a commanding lead in the polls or appears likely to seek national office and is thus far more likely to purchase additional advertising space after the primary date than is Candidate B. Although such a consideration—the likelihood of repeat or prolonged business—is one TDI often takes into account when dealing with commercial customers, it is obvious that applying that same standard would leave TDI, and consequently the MTA defendants, susceptible to charges that they had favored the candidate most likely to succeed. Avoiding such favoring of one candidate over another is surely a compelling state interest.

The fact that avoiding discrimination among political candidates is a compelling state interest does not end the inquiry, however. If, as plaintiffs maintain, charging the rate card prices is not a narrowly tailored way of serving that interest, then plaintiffs are likely to succeed on the merits of their claim. The Court, however, has seen no evidence that would allow it to conclude that, with regard to advertising space on the exterior of New York City buses, there is a more narrowly tailored way of avoiding the favoring of particular candidates.

To support their claim that defendants can more narrowly tailor their policy plaintiffs point to the practice of the subway system's advertising agent, who offers discounts to political candidates through a formula, the parameters of which are not explained clearly in the record. Defendants respond that such discounts can be made available for subway advertising consistent with market-rate pricing, because a large percentage of subway advertising space is always unused. On the exterior of buses, in contrast, advertising space is almost always sold out. Thus, unlike subway advertisers, many bus advertisers do pay full price. As mentioned above, defendants, on very short notice, have come up with over twenty examples of commercial advertisers with plaintiffs' advertising profiles who have paid the full rate card price during the past year. Consequently, requiring defendants to establish a set discount for campaign advertisements—plaintiffs' suggested solution—would likely result in requiring defendants to charge political candi-

dates below market price, a result far more constrictive than the First Amendment requires. As discussed above, the alternative—requiring defendants to negotiate with campaigns in the same manner as they do with commercial vendors—does not provide a satisfying solution, because it will inevitably result in favoring particular political candidates over others for subjective, non-quantifiable reasons. In short, based on the information currently before the court, I find that plaintiffs have not shown that they are likely to succeed in their claim that there is a more narrowly tailored way of accommodating the compelling interests at stake here.

## CONCLUSION

For that reason, and because plaintiffs have failed to establish irreparable harm, I deny plaintiffs' motion for a preliminary injunction. The parties shall complete any additional discovery by September 3, 1993, and file dispositive motions, if any, by September 7, 1993. If no such motions are filed, the parties shall submit a joint pre-trial order and legal memoranda by September 7, 1993 and be ready for trial on September 8, 1993. The parties may contact the Court to enlarge the schedule hereby imposed if they need more time to prepare their cases.

SO ORDERED.