**Irvin Dana BEAL and Robert B. MacDonald, Plaintiffs–Appellants,**

**v.**

**Henry STERN, in his official capacity as Commissioner, New York City Department of Parks and Recreation, Defendant–Appellee.**

**Docket No. 97–9218.**

United States Court of Appeals, Second Circuit.

Argued: May 21, 1998.

Decided: June 9, 1999.

Richard L. Wilson, Law Office of Richard L. Wilson, Orlando, Florida (Dorothy M. Weber, Shukat, Arrow, Hafer & Weber, New York, New York, of counsel), for Plaintiffs–Appellants.

Elizabeth I. Freedman, City of New York Law Department, New York, New York (Michael D. Hess, Corporation Counsel of the City of New York; Francis F. Caputo, Virginia Waters, City of New York Law Department, New York, New York, of counsel), for Defendant–Appellee.

Before: WINTER, Chief Judge, CALABRESI, Circuit Judge, and KNAPP, District Judge.[*]

WINTER, Chief Judge.

Irvin Dana Beal and Robert B. MacDonald appeal from Judge Sprizzo's denial of their motion for a preliminary injunction. They seek to prohibit the New York City Department of Parks and Recreation (the "Parks Department") from enforcing certain restrictions on assemblies and rallies contained in provisions of Chapter 1 of Title 56 of the Rules of the City of New York ("RCNY" or the "Rules"). Appellants challenge these provisions as facially impermissible restraints on speech. The district court denied the motion on the ground that appellants had not shown a clear likelihood of success on the merits of their claims. On appeal, appellants contend principally that the Rules constitute an impermissible prior restraint on speech, that they give the Commissioner constitutionally excessive discretion to grant or deny permits, and that at least as to one

[*] The Honorable Whitman Knapp, of the United States District Court for the Southern District of New York, sitting by designation.

provision is over-broad. For the reasons stated below, we remand.

## BACKGROUND

Pursuant to RCNY § 1–05, the Parks Department requires the acquisition of a special permit for assemblies of more than 20 persons on land within its jurisdiction. *See* 56 RCNY § 1–05(a)(2). Section 1–05(a)(4) permits the Commissioner of the Parks Department to deny a permit application for any of the following five reasons:

(i) the location sought is not suitable because of landscaping, planting, or other environmental conditions reasonably likely to be harmed by the proposed event;

(ii) the location sought is not suitable because it is a specialized area including, but not limited to, a zoo, swimming pool, or skating rink, or because the proposed event is of such nature or duration that it cannot reasonably be accommodated in that location;

(iii) the date and time requested have previously been allotted by permit; or

(iv) within the preceding four years, the applicant has been granted a permit and did, on that prior occasion, knowingly violate a material term or condition of the permit, or any law, ordinance, statute, or regulation relating to the use of the parks; or

(v) the event would interfere unreasonably with the enjoyment of the park by other users.

56 RCNY § 1–05(a)(4).

Section 1–05(a)(5) sets forth certain procedures that the Commissioner must follow in ruling on permit applications. If an application is filed 60 or more days prior to the requested date, the Parks Department "shall notify the applicant of its decision no later than 30 days prior to the requested date." Otherwise, "the Department shall notify the applicant of its decision as soon as is reasonably practicable." Further, "[i]f the permit is denied, the Department shall state the [provision] under which the permit was denied," and, unless the permit was denied pursuant to Section 1–05(a)(4)(iv), "shall employ reasonable efforts to offer the applicant suitable alternative locations and/or times and/or dates for the proposed event." Finally, Section 1–05(a)(5) provides for an administrative appeal from a denial of a permit if the appeal is filed within ten days of receipt of the notice of denial.

Beal and MacDonald are activists dedicated to the legalization of marijuana for medicinal purposes. They are affiliated with a group called Cures Not Wars ("Cures"). Cures has for several years held an annual parade and rally in early May. Each rally has been marred by arrests and damage. In February 1997, the Parks Department denied an application filed on behalf of Cures for a permit to hold a rally on May 3, 1997, in Washington Square Park ("WSP"). The grounds for the denial were violations of the Rules during previous Cures rallies. Cures filed an administrative appeal on March 18, 1997, which the Commissioner denied on March 24, 1997.

On April 18, 1997, Cures commenced a facial challenge to the Rules in New York State Supreme Court pursuant to CPLR Article 78, seeking injunctive relief. The court declined to hold the Rules unconstitutional but ordered the Parks Department to consider alternative sites and/or other restrictions for the rally. The Parks Department then offered Cures two alternative sites for the May 3 rally. Cures accepted Battery Park and scheduled the rally. On May 2, 1997, appellants informed the Parks Department that the rally was postponed on account of rain. However, on May 3, about 500 people, including MacDonald, gathered in WSP. MacDonald was arrested for conducting a rally without a permit in violation of 56 RCNY § 1–05(a)(2).

On May 5, 1997, Jerry Greenberg filed an application for a rescheduled Cures rally on September 6, 1997. On June 13, 1997, the Commissioner denied Green-

berg's request, pursuant to RCNY § 1–05(a)(4)(iv) (material violation of a permit term within preceding four years), because of the "unauthorized rally" on May 3 and the "illegal activity" of one of Cures' organizers, i.e., MacDonald. On June 17, 1997, Greenberg filed an administrative appeal. Having heard nothing for some time, Greenberg contacted Assistant Corporation Counsel Carmen Twillie Ambar to inform her that he was planning to file suit. She advised him that a decision was forthcoming.

No decision having been rendered by September 8, 1997, Beal and MacDonald commenced this action. Their complaint asserted in pertinent part that the permit requirement is a facially unconstitutional prior restraint on speech. It sought preliminary and permanent injunctive relief. Appellants contended, inter alia, that Section 1–05(a)(4)(iv) is overbroad and that the Commissioner has unconstitutionally excessive discretion to grant or deny permits under Sections 1–05(a)(4)(iv) & 1–05(a)(5).[1]

On September 12, the Commissioner denied Greenberg's administrative appeal based on MacDonald's activities at the May 3, 1997 rally. On September 23, 1997, the Parks Department offered to allow appellants to conduct a rally on October 5 at Battery Park. Appellants rejected this offer, asking instead for a permit to hold a rally in City Hall Park.

On September 29, 1997, the district court denied plaintiffs' request for a preliminary injunction, finding that they had not demonstrated a likelihood of success on the merits. The district court reasoned that the permit requirement was content-neutral and thus "not a prior restraint of speech," but was rather a "reasonable time, place and manner restriction." It therefore concluded that "some discretion in the administrative officials is permissible." With regard to irreparable injury,

the court found that while the Rules may have "some incidental effect on speech," the "balance of the hardships probably does tip in favor of the [Commissioner]." In addition, the district court ruled that Section 1–05(a)(4)(iv) was not susceptible to a facial challenge. The present appeal followed.

## DISCUSSION

### A. Standards

■ We review a district court's denial of a preliminary injunction motion for abuse of discretion. See Bery v. City of New York, 97 F.3d 689, 693 (2d Cir.1996). An error of law or fact would constitute an abuse of discretion, see id., but we are nevertheless "free to affirm an appealed decision on any ground which finds support in the record," Millares Guiraldes de Tineo v.. United States, 137 F.3d 715, 719 (2d Cir.1998) (internal quotation marks omitted).

■ In general, a district court may grant a preliminary injunction where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. See Bery, 97 F.3d at 693–94. However, when " 'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Id. at 694 (quoting Plaza Health Lab., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989)). Finally, when the injunction sought " 'will alter, rather than maintain the status quo,' " or will " 'provide the movant with . . . relief [that] cannot be undone even if the defendant pre-

---

1. The parties agreed by joint stipulation, dated September 24, 1997, to narrow the issues on which plaintiffs' motion for a preliminary injunction was based, without limiting the issues that plaintiffs may raise at trial.

vails at a trial on the merits,'" the moving party must show a "clear" or "substantial" likelihood of success. *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996) (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33–34 (2d Cir. 1995)).

The district court held that the challenged regulations were enacted in the public interest and pursuant to a regulatory scheme and that the relief sought was "in the nature of mandatory injunctive relief which [would provide appellants with] the benefit of a decision on the merits preliminarily." It thus held that the "clear likelihood of success" standard applied. We agree.

■ A city the size of New York cannot allow rallies or demonstrations to take place in city parks at the whim of promoters. Competing uses create scheduling problems, and others using parks for recreation have legitimate interests that must be protected. Some regulation is necessary. The challenged regulations plausibly exist for public rather than private goals and pursuant to a regulatory scheme. Moreover, the relief sought would at its broadest eliminate the permit requirement altogether and at its narrowest prevent the Commissioner from enforcing one or more of the challenged provisions of the Rules.[2] It is therefore "in the nature of mandatory injunctive relief," as the district court found, in that it would "change the positions of the parties as it existed prior to the grant." *Abdul Wali v.*

*Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985); *see also Tom Doherty Assocs.,* 60 F.3d at 34 (" 'Though the order [sought] is prohibitory in form, rather than mandatory, it accomplishes significantly more than preservation of the status quo.'" (quoting *SEC v. Unifund SAL,* 910 F.2d 1028, 1040 (2d Cir.1990))).

### B. *Irreparable Injury*

The district court apparently assumed, for purposes of its ruling, that appellants had shown irreparable injury because the Rules have "some incidental effect on speech." It also noted with respect to the balance of hardships, however, that "the City would suffer substantial injury" from an erroneous decision.[3]

■ Given that this action is a facial challenge to the Rules, the irreparable injury issue and the likelihood of success issue overlap almost entirely, and we need not dwell on the former. A statute that threatens freedom of expression to a significant degree by its nature gives rise to irreparable injury. *See Bery,* 97 F.3d at 693 ("Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction." (citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976))). The conclusion that freedom of expression is threatened, however, depends on the merits of the action. Accordingly, in the context of this facial challenge, the presence of irreparable injury turns on whether the plaintiff has

---

**2.** We note that the district court's view of the balance of hardships was apparently colored by its belief that the only remedy it could grant on a facial challenge would be a broad injunction against the enforcement of the challenged provisions. This is an exaggeration. Because an injunction is an exercise of equitable authority, courts "must sensitively assess all the equities of the situation, including the public interest." *Million Youth March, Inc. v. Safir,* 155 F.3d 124, 125 (2d Cir.1998). "The invalidity of a permit regulation cannot automatically entitle a plaintiff to hold its event precisely as it wishes." *Id.* at 126.

**3.** The provision of the Rules believed by the district court to have "some incidental effect on speech" is Section 1–05(a)(4)(v). That Section allows a denial of a permit if the Commissioner finds that the proposed use would cause an unreasonable interference with the enjoyment of the park by others. The Parks Department, however, asserted that its administrative practice has been to narrow the scope of discretion under this provision. Given the vacuum that constitutes the present record, we offer no opinion as to the validity of this provision.

shown a clear likelihood of success on the merits. *See Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839, 853 (2d Cir.1996); *see also MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 358 (7th Cir. 1997) (involving same plaintiff as here); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1489–90 (6th Cir.1995). We may assume, therefore, without deciding, that appellants have satisfied the irreparable harm prong of the preliminary injunction test, although we offer no opinion on the extent of the potential effect on speech.

### C. *Likelihood of Success*

 The district court concluded that appellants had not shown a clear likelihood of success on the merits, in part because it found that the challenged regulations were content-neutral "time, place and manner restriction[s]," and thus did not constitute a "prior restraint" on speech. We disagree.

 Because the Rules condition the exercise of expressive activity on official permission—a Parks Department permit—they do constitute a "prior restraint" on speech. The essence of prior restraints are that "they g[i]ve public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Southeastern Promotions* ); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir.1993) (same); *Dial Infor. Serv. Corp. v. Thornburgh*, 938 F.2d 1535, 1543 (2d Cir.1991) (same). A regulation may constitute a prior restraint even if it is not content-based. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (ordinance requiring permit and fee before authorizing public speaking, parades, or assemblies is prior restraint); *Southeastern Promotions*, 420 U.S. at 553–

54, 95 S.Ct. 1239 (characterizing *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), which involved licensing requirement for assembly in public parks, as prior restraint case); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (parade permit requirement is prior restraint). Further, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). This view reflects "a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Southeastern Promotions*, 420 U.S. at 559, 95 S.Ct. 1239 (opinion of O'Connor, J.).

 The conclusion that a regulation constitutes a prior restraint, however, is not dispositive of its constitutional validity. "Although there is a heavy presumption against the validity of a prior restraint, the Court has recognized that government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally." *Forsyth County*, 505 U.S. at 130, 112 S.Ct. 2395 (internal quotation marks and citations omitted). In particular, content-neutral time, place, and manner restrictions are permitted so long as they are "narrowly tailored to serve a significant governmental interest, . . . leave open ample alternatives for communication," and do "not delegate overly broad licensing discretion" to government officials. *Id.; see also Bery*, 97 F.3d at 697; *Paulsen v. Gotbaum*, 982 F.2d 825, 828 (2d Cir.1992).

A constitutional limitation on excessive official discretion exists because a regulation susceptible to arbitrary application "has the potential for becoming a means of suppressing a particular point of view. To curtail that risk, a law subjecting the exercise of First Amendment freedoms to the

prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth County*, 505 U.S. at 130–31, 112 S.Ct. 2395 (internal quotation marks and citation omitted). For the same reason, "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/ PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

### i. *Extent of Official Discretion under the Rules*

■ Appellants contend that the Rules accord the Commissioner unbridled discretion to grant or deny permits. They note that Sections 1–05(a)(4)(iv) and 1–05(a)(5) together permit, but do not require, the Commissioner to deny a permit to persons who have been issued a permit in the preceding four years and violated a material term thereof, and argue that the Rules lack certain procedural safeguards required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The district court did not reach either of these concerns. With respect to the former claim, the district court held that Section 1–05(a)(4)(iv) was not susceptible to a facial challenge; as to the latter claim, it found that the rules were not prior restraints and, as a result, did not address the so-called *Freedman* factors.

We disagree with the district court's conclusion that the Commissioner's discretion under Section 1–05(a)(4)(iv) is not susceptible to a facial challenge, even one that may ultimately be unsuccessful. The district court viewed such a challenge as foreclosed by the dispute between the parties as to whether the Commissioner had exceeded his authority in denying a permit to Greenberg under this provision. Because

of this denial, the court concluded that appellants could challenge this determination only "as applied." [4] The district court concluded that "if you did violate the terms of the permit, then no one could argue you were entitled to another one." Accordingly, it did not go on to analyze the extent of discretion accorded the Commissioner.

The fact that appellants had been denied a permit on the ground that they had violated a term of an earlier permit does not, in our view, preclude them from raising a facial challenge to Section 1–05(a)(4)(iv), if that provision is otherwise susceptible to a facial challenge. *See Forsyth County*, 505 U.S. at 129, 112 S.Ct. 2395 (facial challenge to provision can lie "even though its application in the case under consideration may be constitutionally unobjectionable"). Instead, the question remains whether the provision does, as alleged, "vest[ ] unbridled discretion in a government official over whether to permit or deny expressive activity." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *cf. Ward*, 491 U.S. at 793–94, 109 S.Ct. 2746 (suggesting facial challenge inappropriate where challenged discretion did not include authority to deny permits altogether).

Although facial challenges are generally disfavored, they are more readily accepted in the First Amendment context. *See Forsyth County*, 505 U.S. at 129, 112 S.Ct. 2395 ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation. . . ."); *Lebron v. National R.R. Passenger Corp.*, 69 F.3d 650, 659 (2d Cir.1995) ("[T]he Court has altered its traditional rules of standing to permit [facial attacks] in the First Amendment area. . . ."). "This exception . . . is

---

4. The as-applied challenge perceived by the district court arose out of a dispute about whether this provision should apply at all to someone—namely, Greenberg—who was merely affiliated with a person who had been issued a permit and violated a material term thereof within the preceding four years. The court noted that "[y]ou say he did; he said he didn't. But . . . [t]hat has to be an unconstitutional 'as applied' challenge . . . ." We express no view as to the constitutionality of applying this provision to someone in Greenberg's circumstances.

based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court," *Forsyth County,* 505 U .S. at 129, 112 S.Ct. 2395, and "the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action," *City of Lakewood,* 486 U.S. at 759, 108 S.Ct. 2138. Thus, where a law's "nexus to expression" is such that discretion in its application will "pose a real and substantial threat" of censorship, courts "must entertain an immediate facial attack." *Id.* Because the Rules have a close nexus to "conduct commonly associated with expression," and because appellants assert that unbridled discretion is accorded by Section 1–05(a)(4)(iv), we must address this facial challenge. *Id.*

▬▬▬ Although Section 1–05(a)(4)(iv) may be susceptible to a facial challenge, that challenge—or the likelihood of its success—cannot be determined on the present record. Section 1–05(a)(4) sets forth the grounds on which permit applications may be denied. Each of the grounds other than that set forth in subsection (iv) relates directly to the appropriateness of the desired location for the planned activity, and subsection (iv) is also arguably related

only to the selection of a particular park.[5] As a factor to consider in determining the appropriateness of a particular park for a planned activity, the past park-related conduct of the person or persons applying for the permit hardly seems irrelevant. To be sure, the Commissioner has some discretion under this provision, in that there are no standards governing his decision whether to deny a permit thereunder, but "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward,* 491 U.S. at 794, 109 S.Ct. 2746.[6]

However, it is the combination of Sections 1–05(a)(4)(iv) and 1–05(a)(5) that appellants contest. Section 1–05(a)(5) requires the Commissioner, where a permit application has been denied for any reason *other than pursuant to 1–05(a)(4)(iv),* to "employ reasonable efforts" to provide "suitable alternative locations and/or times and/or dates for the proposed event." Thus, appellants assert that, in situations where the Commissioner finds that Section 1–05(a)(4)(iv) applies, an applicant may be denied a permit altogether under that provision. If so read, the carve-out in Section 1–05(a)(5) significantly increases the discretion afforded the Commissioner under Section 1–05(a)(4)(iv).

5. To reiterate, permits may be denied for several reasons, including the physical or functional unsuitability of a particular location, *see* Sections 1–05(a)(4)(i) & (ii), the fact that the date and time requested have previously been allotted by permit, *see* Section 1–05(a)(4)(iii), and the fact that the event would interfere unreasonably with the enjoyment of the park by other users, *see* Section 1–05(a)(4)(v).

6. The existence of standards does not in itself preclude a finding of unbridled discretion, for the existence of discretion may turn on the looseness of the standards or the existence of a condition that effectively renders the standards meaningless as to some or all persons subject to the prior restraint. *Cf. Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) ("[W]e have consistently condemned licensing systems which vest ... official discretion ...

upon *broad criteria* unrelated to proper regulation of public places." (emphasis added) (internal quotation marks omitted)); *Chesapeake B & M, Inc. v. Harford County,* 58 F.3d 1005, 1009 (4th Cir.1995) ("Unbridled discretion naturally exists when a licensing scheme does not impose *adequate standards* to guide the licensor's discretion." (emphasis added)). This is further evident from the requirement of expeditious decisionmaking set forth in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649, as *Freedman* applies irrespective of the adequacy of the substantive standards set forth in the statute. Indeed, it is the *risk* of an abuse of discretion that has motivated the Court's decisions in this area, *see Forsyth County,* 505 U.S. at 130–31, 112 S.Ct. 2395, and a risk of abuse exists wherever a decisionmaker can effectively discriminate against certain viewpoints, the existence of standards notwithstanding.

■ The Parks Department states that its practice is to offer alternative locations even where an application is denied on the basis of the prior-violation-of-a-permit provision. This limiting construction is critical to the validity of the Rules on a facial challenge. *See Ward*, 491 U.S. at 795–96, 109 S.Ct. 2746 ("[a]dministrative interpretation and implementation ... are ... highly relevant ... in evaluating a facial challenge" (internal quotation marks omitted)).[7] There is evidence in the record that would support the Parks Department's claim that its practice is to permit alternative locations, although there is also evidence to the contrary.[8] Because the record on this issue is unclear, we cannot conclude that appellants have shown a clear likelihood of success on the merits.

### ii. *Freedman Factors*

■ In support of their contention that the Rules vest unbridled discretion in the hands of implementing officials, appellants also note the lack of a specified time-period in which the Commissioner must act upon a permit application and of an avenue for prompt judicial review of a permit denial. They rely on a line of Supreme Court cases holding that prior restraint schemes that fail to place specific and reasonable time limits on official decisionmaking and to provide for prompt judicial review of adverse decisions are impermissible. *See FW/PBS*, 493 U.S. at 228, 110 S.Ct. 596 (opinion of O'Connor, J.)

(citing *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)). In *FW/PBS*, Justice O'Connor explained that "[w]here the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion." *Id.* at 227, 110 S.Ct. 596 (opinion of O'Connor, J.).

The district court, because it concluded that the challenged regulations did not amount to a prior restraint, held that the so-called *Freedman* factors were not applicable. For reasons stated above, the regulations do constitute a prior restraint. Thus, the district court should have considered whether they pass muster under *Freedman* analysis.

In *Freedman*, the Court invalidated a statute requiring exhibitors of motion pictures to submit films to the State Board of Censors for examination in advance of screening. In order to challenge the statute, Freedman had exhibited a film without prior submission to the Board. Although the state conceded that the exhibited film did not violate statutory standards, Freedman was nevertheless convicted of a statutory violation. *See* 380 U.S. at 52–53, 85 S.Ct. 734. The issue on appeal was not whether the Board could exercise censorship authority, but whether the lack of temporal limits rendered the censorship scheme an invalid prior restraint. The Court concluded that it did, noting that the lack of time restraints

7. Although an agency's interpretation is relevant to a facial challenge, we may not simply presume that an agency or official will adhere to standards not evident on the regulation's face or embodied in authoritative decisions or practice. *See City of Lakewood*, 486 U.S. at 770, 108 S.Ct. 2138. Rather, "[t]he doctrine [prohibiting unbridled discretion] requires that the limits the [agency] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *Id.* Because a federal court cannot supply a binding construction of a state or local ordinance, the limiting construction in this case must come, if at all, from the Parks Department or a state court. *Cf. United States v. Thirty-*

*Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) ("The obstacle [to judicial construction] in *Freedman* and *Teitel* was that the statutes were enacted pursuant to state rather than federal authority.").

8. In this case, the Commissioner has twice relied on this provision to deny permit applications filed on behalf of Cures. However, in each instance, Cures was ultimately offered a permit. In any event, in a facial challenge the Commissioner's actions towards appellants is relevant only as evidence to support or rebut the Parks Department's claimed practice with respect to this provision.

contains the same dangers as does a lack of objective standards—it gives a decisionmaker essentially unreviewable authority to suppress speech. *See id.* at 58–59, 85 S.Ct. 734. Accordingly, the Court held that in addition to objective limits on discretion, content-based prior restraints must contain three procedural safeguards. First, the licensor must be required to decide whether to issue the license "within a specified brief period" during which the status quo is maintained, *id.* at 59, 85 S.Ct. 734; second, "a prompt final judicial decision" must be assured, *id.;* and third, the burden of proving that the expression is unprotected must rest with the censor, *see id.* at 58, 85 S.Ct. 734.

In *FW/PBS,* the Court made clear that *Freedman* also applied to content-neutral prior restraint situations. *FW/PBS* involved a broad challenge to a licensing and zoning scheme passed by the city of Dallas to regulate sexually oriented businesses. The Fifth Circuit, viewing the ordinance as a content-neutral time, place, and manner regulation, held, *inter alia,* that the procedural safeguards set forth in *Freedman* did not apply. The Supreme Court reversed, noting that because the ordinance lacked adequate procedural safeguards, it need not reach the question of whether the scheme was content-neutral. *See* 493 U.S. at 223, 110 S.Ct. 596 (opinion of O'Connor, J.). The Court was divided over how many of the *Freedman* factors applied. Justice O'Connor, in a section of her opinion for the court joined by two other Justices, stated that because the city did not "exercise discretion by passing judgment on the content of any protected speech," the third *Freedman* factor—that the censor bear the burden of going to court and the burden of proof once there—was not applicable. *Id.* at 229, 110 S.Ct. 596. Justice Brennan, in a concurrence joined by Justices Marshall and Blackmun, argued

that all three *Freedman* factors applied. *See id.* at 238–39, 110 S.Ct. 596 (Brennan, J., concurring in the judgment). Thus, six Justices held that "the first two [*Freedman*] safeguards are essential". *Id.* at 228, 110 S.Ct. 596 (opinion of O'Connor, J.).[9]

In the present case, the challenged regulations are content-neutral and thus need comply with only the first two *Freedman* factors. *See Chesapeake B & M, Inc. v. Harford County,* 58 F.3d 1005, 1010 (4th Cir.1995); *Grand Brittain, Inc. v. City of Amarillo,* 27 F.3d 1068, 1070 (5th Cir. 1994). With respect to the first factor, Section 1–05(a)(5) in fact contains somewhat specific time limits on agency action. It requires that the Parks Department respond to a permit application "no later than 30 days prior to the requested date" unless the application was filed within 60 days of the date requested, in which case the Department is to respond "as soon as is reasonably practicable." Appellants point out that the Supreme Court has interpreted *Freedman* to mean that "the licensor must make the decision ... within a specified and reasonable time period." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596 (opinion of O'Connor, J.). Because the Rules require only that decisions be made with reference to the requested date, not the application date, appellants contend that the permitted time-period is neither "specified" nor always "reasonable."

We are unprepared, on this record, to hold that appellants have shown a clear likelihood of success on the merits of this claim. The Parks Department has defended the validity of this provision by pointing out its need to balance competing requests for permits. It contends that were it to have to act within a set period of time after receiving a permit, it would lose flexibility with respect to last-minute permit applications. Because many important

9. The remaining justices in *FW/PBS* argued that the *Freedman* factors should not apply at all to content-neutral time, place, and manner restrictions. *See* 493 U.S. at 244, 110 S.Ct.

596 (White, J., concurring in part and dissenting in part (with whom Rehnquist, C.J., joined)); *id.* at 250, 110 S.Ct. 596 (Scalia, J., concurring in part and dissenting in part).

public issues arise on little notice, it argues that such a rule would ill-serve free speech.

Although we express no opinion as to the ultimate merits of the Parks Department's argument, it is not plainly unreasonable. Neither *Freedman* nor *FW/PBS* involved the problem of competing applicants for limited public fora whose needs vary in their degree of urgency. Circumstances in which a speaker seeks a permit that, if granted, will not affect the ability of others to engage in expressive activity differ materially from circumstances in which the granting of a permit will exclude other speakers whose needs may be more urgent. In the former case, requiring the observance of specific time limits does not limit the speech of others; in the latter, it may. Whether Section 1–05(a)(5) is problematic under *Freedman* will depend, in significant part, on facts that should be more fully developed at trial, including, *inter alia*, the number of competing permit requests the Parks Department receives in a given year, the temporal distribution of applications in advance of requested dates, and both applicants' and the Parks Department's need for advance notice and flexibility.

 We are likewise unprepared, on this record, to invalidate the Rules for failure to specify a time-period in which appeals from permit denials will be resolved or to provide for prompt judicial review thereof. Although either failure, if proved at trial, would constitute a First Amendment violation, the record is incomplete with respect to these issues. For instance, if the Parks Department's demonstrated practice in implementing the Rules is to respond promptly to appeals of

permit denials, this practice should be taken into account.[10] *See Ward*, 491 U.S. at 795–96, 109 S.Ct. 2746. Similarly, prompt access to judicial review in state courts would satisfy *Freedman*, and there is some evidence in the record that such access is available. Thus, in light of the paucity of the evidence in the record on this matter, we cannot say that plaintiffs have shown a clear likelihood of success on the merits.

### iii. *Section 1–05(a)(4)(iv)*

 Appellants also contend that Section 1–05(a)(4)(iv), discretion aside, is an unlawful prior restraint in that it is neither "narrowly tailored" nor "leaves open ample alternative channels for communication." *Forsyth County*, 505 U.S. at 130, 112 S.Ct. 2395. Their "narrowly tailored" argument is that the provision is both over- and under-inclusive in that it applies only to people who have been issued a permit in the previous four years. Thus, someone who has not been issued a permit in the past but who has caused serious damage to a park is not covered by this provision, while someone who was issued a permit in the past and exceeded his allotted time by five minutes is covered. Their argument with respect to "ample alternatives" is simply that this provision, together with Section 1–05(a)(5), permits the Commissioner to deny a permit outright to one class of applicants.

 That a provision is over- and under-inclusive is not generally sufficient to trigger the narrowly tailored requirement, *see Ward*, 491 U.S. at 798–99, 109 S.Ct. 2746 (least restrictive means not required), though the means chosen may not be "substantially broader than necessary to achieve the government's interest ...,"

10. The record in this case shows that although the Parks Department responded to Cures' March 18, 1997 appeal of a permit denial within one week, it did not respond to appellants' June 17, 1997 appeal for approximately three months. While neither action is directly relevant to a facial challenge, each response-period is evidence of the Department's practices in this respect. Although

further evidence is needed on this issue, it is clear that three-month delays in responding to appeals of permit denials of this sort would violate *Freedman*. *See Teitel Film Corp. v. Cusack*, 390 U.S. 139, 141–42, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) (50– to 57–day administrative process period prior to judicial review not "a specified brief period").

*id.; see also Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7th Cir.1997) (when a regulation "constrains speech in ... streets and parks ... [it] must not impede communication more than is necessary to achieve the legitimate and compelling public interest behind the regulation"). Whether a restriction leaves untouched ample alternatives for communication is not a formulaic inquiry, but depends on the nature of the forum sought, the nature of alternative fora, and the impact of the regulation on the ability of the regulated person or persons to get their message out. At a minimum, this requires the availability of an alternative public forum. *See Bery*, 97 F.3d at 698 ("[A]ppellants are entitled to a *public* forum for their expressive activities." (citing *Southeastern Promotions*, 420 U.S. at 556, 95 S.Ct. 1239)); *cf. Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ("In places [such as streets and parks] which by long tradition ... have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed."); *Ayres*, 125 F.3d at 1016 ("[Where] the challenged regulation seems likely to obliterate the plaintiff's message, the existence of less restrictive alternatives that would protect the valid regulatory interest is material to the constitutional issue.").

We are not prepared to find on this record that appellants have shown a clear likelihood of success on the merits of either claim. As to narrow tailoring, we simply do not have sufficient evidence to determine whether the means chosen by the Parks Department are substantially broader than necessary. Resolution of this issue will depend on amplification of the record as to various matters, including the nature and extent of the harms inflicted on public parks by those who are issued permits and violate park rules and the nexus between the class covered by the provision and the harms it seeks to address. Similarly, although appellants argument with respect to the closure of alternative locations is not without force— the outright denial of· a permit for four years is a potentially severe sanction, and arguably fails to leave open ample alternatives for communication [11]—whether this Section leaves ample alternatives for communication will depend in part on the Parks Department's interpretation of its scope. For instance, if, as the Commissioner argues, the Parks Department's well-established practice is to offer alternative locations even where an application is denied on the basis of this provision, the potential threat to free expression posed by the combination of Sections 1–05(a)(4)(iv) & 1–05(a)(5) is accordingly reduced.

## CONCLUSION

For the above reasons, we remand the case to the district court. Although this decision leaves open the possibility that appellants may again move for a preliminary injunction on a slightly amplified record, we believe the merits of this dispute would best be resolved by a proceeding in which a complete record is made as, for example, suggested in Fed.R.Civ.P. 65(a)(2). We emphasize, in any event, that nothing we say should be construed to express any opinion as to whether, on a more complete record, appellants will succeed in establishing that the Rules are facially invalid under the First Amendment.[12]

---

11. Appellants do not contest that Section 1–05(a)(4)(iv), in connection with Section 1–05(a)(5), is a time, place, and manner restriction, and we therefore do not reach this issue.

12. We note that, although the Parks Department has denied permit applications filed on behalf of Cures, the present record is not clear as to whether it has ever actually pre-

vented Cures from staging a rally in a public park. After Cures brought an Article 78 proceeding in state court in April 1997, the Department offered and Cures accepted an alternative site for a May 3, 1997 rally. Cures voluntarily canceled this rally on account of the weather. Subsequently, though the Department again denied Cures' application for a rain date, it ultimately agreed to allow for a rescheduled rally. This, of course, is dispositive neither of a facial challenge to the Rules nor of the issue of irreparable injury.