Malcolm TILLIM, Eugene Haynes, and Robert Fonti, Individually, and as Commissioners of the Huntington Housing Authority, Plaintiffs,

v.

HUNTINGTON HOUSING AUTHORI-TY, Mabel Harris and the Huntington Town Board of the Town of Huntington, Defendants.

No. CV00–1931 ADS.

United States District Court, E.D. New York.

May 11, 2000.

Malcolm L. Tillim, Melville, NY, for Plaintiff Pro Se.

Vitale & Levitt, P.C., Melville, NY, Paul E. Levitt, Of Counsel, for the Plaintiffs Eugene Haynes and Robert Fonti.

Hamburger, Maxson & Yaffe, LLP, Melville, NY, Richard Hamburger, Of Counsel, for the Defendant Huntington Housing Authority.

Law Offices of Frederick K. Brewington, Hempstead, NY, Frederick K. Brewington, Of Counsel, for the Defendant Mabel Harris.

Thelma Neira, Huntington Town Attorney, Huntington, NY, By Lawrence W. Cregan, Deputy Town Attorney, for the Defendant the Huntington Town Board of the Town of Huntington.

## ORDER

SPATT, District Judge.

## I. BACKGROUND

The dispute in this case centers on a controversy among the five members of the Board of the Huntington Housing Authority ("HHA") regarding its membership; the validity of the position of Mabel Harris, a resident of public housing, as a sixth voting member of the HHA; and the interpretation of the Qualified Housing and Work Responsibility Act ("QHWRA") 42 U.S.C. § 1437 governing the designation of a resident member of the HHA.

### A. Procedural History

On March 17, 2000, this case was filed by the plaintiffs Malcolm Tillim, Eugene Haynes, and Robert Fonti, all purported members of the HHA, as an Article 78 proceeding in the Supreme Court, Suffolk County. On April 3, 2000, the case was removed by defendant Harris to this Court pursuant to 28 U.S.C. § 1441. On April 14, 2000, the plaintiffs filed an order to show cause seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). The plaintiffs request the following relief: (1) enjoining the HHA from appointing or removing any Commissioner or person to the Board of the HHA other than those that have been appointed by the Huntington Town Board; (2) enjoining the defendants from recognizing the vote of any Commissioner or person who has not been duly appointed by the Town Board; (3) declaring the HHA's purported appointment of Mabel Harris as a Commissioner of the HHA to be null and void; and (4) declaring that the HHA shall only have five board members and that all future members are to be appointed by the Town Board.

By an Order dated April 14, 2000, this Court referred the plaintiffs request for a preliminary injunction to United States Magistrate Judge Michael L. Orenstein pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation.

### B. The Hearing

On April 24, 26, 27, and 29, 2000, Judge Orenstein conducted a hearing in this matter. A review of the underlying facts is critical in order to review the recommendations made by Judge Orenstein.

The HHA is a municipal housing authority established under New York State Public Housing Law § 472. Section 472,

entitled, "Town of Huntington housing authority," states in pertinent part that "[a] municipal housing authority, to be known as the town of Huntington housing authority is hereby created and established ... [and] shall ... consist of five members." The five Commissioners of the HHA are to be appointed by the Town Board. *Id.* The HHA is qualified as a "public housing agency" under the provisions of 42 U.S.C. § 1437 *et seq.*, and the Department of housing and Urban Development Act ("HUD"), and is subject to Federal statutes and regulations regarding the development, operation and management of its units.

The HHA is the owner of a 40–unit multiple dwelling known as Gateway Gardens in the Town of Huntington. Gateway Gardens is occupied by 40 tenants and their families. At the time of the dispute, there were 32 families living in the premises. The HHA also monitors and administers a federally sponsored rent subsidy program, commonly referred to as Section 8 Housing. Approximately 500 families in the Town of Huntington receive Section 8 funding.

The relevant factual scenario in this case began in November 1999 when a presumed vacancy occurred when one commissioner, Yvonne Pena, apparently resigned. It is unclear from the record whether Pena filed her resignation with the Town Clerk of the Town of Huntington as required by Public Officers Law § 31. However, that issue is not presently before this Court. For the purpose of determining this motion, the Court will assume that Pena did properly resign. After the Pena resignation, the HHA consisted of four members, namely, plaintiffs Haynes and Fonti and the non-party members, Nathaniel Ham and Charles Robinson. On January 11, 2000, the Town Board appointed Tillim as the fifth Commissioner. However, at the February 16, 2000 meeting of the HHA, Ham, the Chairman of the Board of Commissioners, announced that defendant Harris was deemed to be the sixth full voting member of the HHA pursuant to the provisions of the QHWRA which required one board member who was directly assisted by the public housing authority. The appointment of Harris created a three to three deadlock on numerous issues. On April 7, 2000, Tillim was advised that he was no longer recognized as a Commissioner of the HHA.

## C. *The Report and Recommendation*

On May 1, 2000, Judge Orenstein issued a Report and Recommendation making the following findings: (1) that following the enactment of QHWRA, the HHA was required to have a resident board member; (2) Malcolm Tillim was not qualified to be appointed as a Commissioner to the purported opening on the HHA; (3) due to irregularities in the appointing procedure, Mabel Harris was not qualified to be appointed as a Commissioner to the purported opening on the HHA; and (4) while it appears that Commissioners Ham, Fonti and Robinson did not properly file their oaths of office, they remained as holdover Commissioners of the HHA until which time the Town Board declares their positions vacant and makes new appointments.

## D. *The Objections*

The Court has received the following objections to Judge Orenstein's Report and Recommendation. The Town of Huntington contends that Judge Orenstein erred when he concluded that (1) even if Commissioners Ham, Fonti and Robinson failed to properly file their oaths of office they remained "holdovers;" and (2) that upon the effective date of the QHWRA, the Town Board was required to refrain from appointing a Commissioner to a vacancy until such time as there was an eligible and lawfully selected tenant representative. In addition, the Town urges the Court to make a finding that Section 8 tenants were improperly excluded from the selection process for a resident board member.

Plaintiff Malcolm Tillim objects to Judge Orenstein's conclusions that (1) "Pena remained as a Commissioner of the HHA, never having resigned as required by law;" (2) "[t]hat [his] appointment was void . . .;" (3) "[t]hat the appointment of . . . Fonti as Commissioner of the HHA was questionable and that he should remain on the Board of the HHA only in holdover status until dismissed by the Town Board;" and (4) "[t]hat an injunction should be granted restraining and enjoining . . . Tillim from becoming a Commissioner of the HHA."

Finally, defendant Harris objects to Judge Orenstein's finding that she was not qualified to be appointed as a Commissioner to fill the purported opening on the HHA.

## II. DISCUSSION

### A. *The Standard of Review*

### 1. Report and Recommendation

■ Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the Report and Recommendation of the Magistrate Judge within ten days after being served with a copy. *See also* Fed. R. Civ.P. 72(a). Once objections are filed the district court is required to make a de novo determination as to those portions of the Report and Recommendation to which objections were made. *see* 28 U.S.C. § 636(b)(1); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989 ). Although the district court may "receive further evidence or recommit the matter to the magistrate with instructions" (28 U.S.C. § 636[b][1] ), a de novo determination does not require the recalling of witnesses. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter. *See Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 894 F.2d 36, 40 n. 3 (2d Cir.1990).

### 2. Preliminary Injunction

A preliminary injunction is considered an "extraordinary" remedy that should not be granted as a routine matter. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990); *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir.1986); *Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F.Supp. 585, 591 (E.D.N.Y.1997). Ultimately, however, the decision to grant or deny this "drastic" remedy rests in the district court's sound discretion. *See American Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir.1998); *Molloy v. Metropolitan Transp. Auth.*, 94 F.3d 808, 811 (2d Cir.1996).

■ In the seminal case of *Jackson Dairy, Inc. v. HP Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam), this Circuit set forth the applicable standard in this Circuit to obtain preliminary injunctive relief. According to *Jackson Dairy*, the movant must clearly establish the following: "(a) irreparable harm; and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips in favor of the movant." *Id.; see also Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 696 (2d Cir.1998); *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir.1997). However, as the Second Circuit recently reiterated in *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir.1999), when "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id.* (quoting *Bery v. City of New York*, 97 F.3d 689, 694 [2d Cir.1996] ).

A showing of irreparable harm is considered the "single most important requirement" in satisfying the standard. *See Alliance Bond Fund, Inc.*, 143 F.3d at 696; *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *National Ass'n for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.1995) (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 [2d Cir.1989] ); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"). The movant must establish more than a mere "possibility" of irreparable harm. Rather, he must show that irreparable harm is "likely" to occur. *JSG Trading Corp.*, 917 F.2d at 79. It is not disputed that irreparable harm would occur if injunctive relief were not granted.

Having found irreparable harm, the second step of the inquiry requires that the movant demonstrate a likelihood of success on the merits. This analysis also requires the heightened standard where the preliminary injunction grants the moving party essentially all the relief he seeks. In such a case, the moving party "must show a substantial likelihood of success on the merits, rather than merely a likelihood of success." *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988); *See also Hevesi v. Metropolitan Transp. Auth.*, 827 F.Supp. 1069, 1071 (S.D.N.Y.1993). Finally, Fed. R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir.1997); *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 902 F.2d 1085, 1088 (2d Cir.1990).

## B. *The Quality Housing Work Responsibility Act of 1988*

The QHWRA states, in pertinent part, that "[e]xcept as provided in paragraph (2), the membership of the board of directors or similar governing body of each public housing agency shall contain not less than 1 member—(A) who is directly assisted by the public housing agency; and (B) who may, if provided for in the public housing agency plan, be elected by the residents directly assisted by the public housing agency." 42 U.S.C. § 1437(b)(1). The exception in paragraph two states that a resident member of the board is not required where either (1) the board is salaried and serves on a full-time basis; or (2) the agency has less than 300 public housing units *and* the agency has provided reasonable notice to the resident advisory board of the opportunity to elect a resident member *and* the public housing agency has not been notified of the intention of any resident to participate on the board. *Id.* at 1437(b)(2).

The effective date of the resident member requirement was October 21, 1999 and the Final Rule as promulgated by HUD stated that the implementation of the resident member requirement should occur as soon as possible. *See* 64 FR 56870 (1999 WL 957491 Oct. 21, 1999). The Court agrees with Judge Orenstein's conclusion that the QHWRA applies to the HHA and that the HHA was required to have a resident member in the time periods involved in this case. In this regard, it is noted that the exceptions set forth in Section 1437(b)(2) are not relevant to the issues in this case. The HHA does not have a full time salaried board; did not give reasonable notice to the resident advisory board of the opportunity for residents to serve on the governing board; and it was clear that the resident advisory board wanted to include a resident member on the board. As such, the Court finds that the exceptions in Section 1437(b)(2) are inapplicable and the relevant resident

member provisions of the QHWRA applied to the HHA.

■ Having concluded that the QHWRA required the HHA to include a resident member on its board, the Court must turn its attention to the ramifications of the resignation of Pena in November, 1999; the appointment of Tillim; and the election of Harris. The Court agrees with Judge Orenstein's conclusion that Tillim was not qualified to replace Pena as the fifth Commissioner of the HHA. At the time of Tillim's appointment, the resident member provisions of the QHWRA were in effect and required the election of a resident member to the HHA. Tillim was not a resident of a public housing unit and was not a recipient of Section 8 housing. Thus, the Court finds that Tillim could not succeed on the merits of his claim. Accordingly, the Court denies his request for a preliminary injunction insofar as it seeks an order permitting him to serve as a Commissioner of the HHA in the vacancy created by Pena.

■ Next the Court will address the plaintiffs' request for a preliminary injunction declaring that the HHA's purported appointment of Mabel Harris as a Commissioner of the HHA is null and void. The Court concurs with Judge Orenstein's conclusion that Harris's appointment as a Commissioner of the HHA was fraught with irregularities and cannot be deemed proper or valid. Harris was not appointed by the Town Board as required by Public Housing Law § 472. She was simply placed on the board at Ham's direction. In addition, Harris did not file an oath of office with the Town clerk as required by Public Officers Law § 31. Furthermore, a more fundamental defect precludes her membership as a Commissioner on the HHA. The Court concurs with Judge Orenstein's findings that Harris's election by the residents of Gateway Gardens was improper due to the failure to note the lack of a quorum and because Harris was not the person initially elected. In fact, Ms. Cade was originally elected, but indicated

that she could not serve because of other commitments. It cannot be disputed that if the Court were to permit Harris to remain as a Commissioner pending the outcome of this litigation, irreparable harm would occur as the HHA would continue to vote on important matters. The Court finds that the plaintiffs have established irreparable harm and a substantial likelihood of success on the merits with regard to the Mabel Harris candidacy. Accordingly, the Court grants the plaintiffs' request for a preliminary injunction declaring the HHA's purported appointment of Mabel Harris as a Commissioner of the HHA to be null and void.

Finally, the Court addresses Judge Orenstein's recommendation that this Court find that Commissioners Ham, Fonti and Robinson did not properly file their oaths of office but should remain as holdovers until the Town Board declares their positions vacant and makes new appointments. The Court declines to make any determinations with regard to the Ham, Fonti and Robinson Commissionerships. While the Court has reviewed the voluminous record and notes that Judge Orenstein's findings of fact with respect to this issue are well-reasoned, the Court finds that this issue is not properly before the Court in the context of the plaintiffs present motion for a preliminary injunction.

The plaintiffs' motion and this Court's referral did not include the issue of whether Commissioners Fonti, Ham and Robinson properly filed their oaths. In addition, while Robinson and Ham testified at the hearing, neither one was named as a party nor were they represented by counsel. Although this issue may ultimately surface in this litigation, in terms of the plaintiffs' present request for a preliminary injunction, the Court, at this stage, declines to make any factual or legal findings as to whether Fonti, Ham and Robinson properly filed their oaths or are valid members of the HHA.

In reaching this decision, the Court is guided by the principle that Federal Courts should not decide matters that are not currently before them. The Second Circuit, in *Marchi v. Board of Cooperative Educational Services of Albany*, 173 F.3d 469, 478 (2d Cir.1999) stated that "where a party seeks to challenge a statute or policy prior to its enforcement, the ripeness doctrine requires that the challenge grow out of a real, substantial controversy between parties involving a dispute definite and concrete. This requirement is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quotations and citations omitted).

In sum, the Court has reviewed the transcripts in this matter, Judge Orenstein's detailed and thorough Report and Recommendation, as well as all of the submissions and objections by the parties, and concludes that as it presently stands, the HHA is comprised of Commissioners Haynes, Fonti, Ham and Robinson. The Court also determines that the fifth and final seat on the HHA must be a resident board member elected in accordance with the QHWRA and all the applicable rules and regulations. Any other issues regarding the status of the Ham, Fonti, and Robinson filing of oaths of office, or whether Yvonne Pena properly resigned are not presently before this Court and cannot be determined in the plaintiffs' present request for a preliminary injunction.

Accordingly, it is hereby

**ORDERED,** that the plaintiffs' request for a preliminary injunction enjoining the HHA from appointing or removing any Commissioner or person to the Board of the HHA other than those that have been appointed by the Huntington Town Board is **DENIED** and it is directed that the HHA is required to have a resident board member following the enactment of the QHWRA and that Tillim is not qualified to be appointed as a Commissioner with respect to the vacant seat created by the resignation of Yvonne Pena; and it is further

**ORDERED,** that the Huntington Town Board is directed to remove Malcolm Tillim as a Commissioner of the HHA with respect to the vacant seat created by the resignation of Yvonne Pena; and it is further

**ORDERED,** that the plaintiffs' motion for a preliminary injunction enjoining the defendants from recognizing the vote of any Commissioner or person who has not been duly appointed by the Town Board is **DENIED** and it is directed that pursuant to the provisions of the QHWRA, the HHA is required to have a resident board member; and it is further

**ORDERED,** that the plaintiffs' motion for a preliminary injunction declaring the HHA's purported appointment of Mabel Harris as a Commissioner of the HHA to be null and void is **GRANTED** and it is directed that the Town Board remove Harris as a Commissioner of the HHA; and it is further

**ORDERED,** that the plaintiffs' motion for a preliminary injunction declaring that the HHA shall only have five board members and that all future members are to be appointed by the Town Board is **GRANTED** only to the extent that one of the five members must be a resident member pursuant to 42 U.S.C. § 1437 and the other four members may be appointed at the discretion of the Town Board.

**SO ORDERED.**