**MILLION YOUTH MARCH, INC., Plaintiff–Appellee,**

v.

**Howard SAFIR, Commissioner of the New York City Police Department, The City of New York, and Rudolph Giuliani, Mayor of the City of New York, Defendants–Appellants.**

**Docket No. 98–9152.**

United States Court of Appeals, Second Circuit.

Argued Sept. 1, 1998.

Decided Sept. 1, 1998.

Michael D. Hess, Corporation Counsel, New York City (Stephen J. McGrath, Robin Binder, Ellen Ravitch, Office of the Corporation Counsel of the City of New York, New York City, on the brief), for defendants-appellants.

Michael W. Warren, Brooklyn, NY (Evelyn W. Warren, Brooklyn, NY, on the brief), for plaintiff-appellee.

(Christopher Dunn, Norman Siegel, Arthur Eisenberg, New York City, submitted a brief for amicus curiae New York Civil Liberties Union Foundation).

Before: NEWMAN, CARDAMONE and PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

We have considered the City's emergency motion for a stay of the injunction dated August 26, 1998, issued by the District Court for the Southern District of New York (Lewis A. Kaplan, Judge), and make the following ruling. The District Court issued an injunction that requires the City to issue a permit to Million Youth March, Inc. for an event on Saturday, September 5, to be held along a 29–block portion of Malcolm X Boulevard from 118th Street to 147th Street in Harlem during the hours of 7 a.m. to 7 p.m.

■ In granting the injunction, the District Court properly recognized that "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The District Court found as a fact that the City denied the plaintiff's application in the exercise of authority pursuant either to the so-called "Activity Rules" of the Street Activity Permit Office of the Community Affairs Unit of the Office of the Mayor or a combination of the Activity Rules and the parade permit rules of Section 10–110 of the New York City Administrative Code. The Court also concluded that the Activity Rules accorded administrators unfettered discretion contrary to well established First Amendment limitations. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Since the City's denial was issued by the Community Affairs Unit, without any reference to Section 10–110, the record plainly supports the finding that the Activity Rules were either the exclusive authority invoked for the denial of the application or at least a substantial part of such authority. At this stage of the litigation, we have no basis to question the Court's conclusion that the standardless nature of the Activity Rules rendered the denial a violation of the First Amendment.

■ The unconstitutionality of the denial, however, does not mean that the plaintiff is entitled to have a district court issue an injunction ordering the City to allow the event precisely as the plaintiff wishes to hold it. An injunction is an exercise of a court's equitable authority, and the exercise of that authority, in the vindication of any legal protection, including the First Amendment, must sensitively assess all the equities of the situation, including the public interest. We have implemented that principle in the context of the exercise of First Amendment rights. *See Olivieri v. Ward,* 801 F.2d 602, 607–08 (2d Cir.1986) (modifying injunction specifying terms under which demonstrators could assemble on sidewalk in front of St. Patrick's Cathedral).

In this case, the District Court, having ruled that the permit denial was unconstitutional, moved too rapidly to require the City to allow precisely what the plaintiff requested. In doing so, the Court appears to have focused only on what the City was physically capable of handling. In rejecting the City's assertion of health and safety interests that justified the permit denial, the Court wrote:

Far more important, the City has ample ability to deal with any problems of congestion, emergency access, overcrowding and fire risk that may arise while allowing the event to go forward in some form at this date and place.... And the Police

Department is fully capable of closing access to Malcolm X Boulevard and environs if its safe capacity is reached and directing any overflow crowd into nearby areas.... Indeed, police officials indicated that the department could police the event with approximately 2,000 to 3,000 officers on each of two tours. Moreover, despite repeated focus on the issue, the City declined to assert that it lacks the necessary personnel.

Memorandum Opinion 24–25.

However, when a federal district court crafts an injunction to vindicate a plaintiff's protected rights, it cannot simply order whatever a City is physically capable of doing, without regard to considerations of public health, safety, convenience, and cost. On the contrary, the Court must make a sound exercise of equitable discretion that considers all the relevant circumstances. The invalidity of a permit regulation cannot automatically entitle a plaintiff to hold its event precisely as it wishes. An example can readily demonstrate this point. If a small town with a police force of 100 denied a permit for a mass meeting of thousands that an applicant group wanted to hold for 24 hours along the town's main street, even a total lack of standards in the permit regulation in flagrant violation of the First Amendment would not justify a district court injunction requiring an event of such scope, location, and duration.

In this case, the District Court appears to have granted the plaintiff precisely the relief it requested in part because of testimony about the City's ability to handle large crowds at other events, including one in Harlem. However, those events were not held at a time when the City's police resources were stretched as thin as on the upcoming Labor Day weekend, nor did they occupy the same number of streets or last as long a time as the plaintiff's planned event. The 1990 celebration of the visit of Nelson and Winnie Mandela, which attracted a crowd estimated between 100,000 and 200,000 was confined within a three to four block area. *Id.* The annual West Indian Day parade lasts about six hours. The Yankees championship parade, which attracted a huge crowd, lasted two to two and one–half hours. The New Year's Eve closure of the Times Square area lasts three to four hours.

The record in this case makes clear that many relevant circumstances have not been adequately considered by the District Court in issuing its injunction for the First Amendment violation that occurred. The Labor Day weekend is an especially busy time for the City's police personnel. Because of the holiday, far more officers than usual are on vacation. Moreover, the holiday weekend already has some 130 events scheduled. Chief among these is the weekend West Indian Day Parade, an event that includes a children's parade on Saturday, September 5, estimated, from past events, to draw some 35,000 people, and the main parade on Monday, estimated to draw one million people. In addition, on that weekend the United States Open Tennis Championship reaches it final stages, and the Mets baseball team is at home.

The plaintiff's planned event is significantly different than anything the City has been called upon to accommodate in the past. The undisputed testimony is that even a city as large and well policed as New York City has never before had to accommodate a stationary (*i.e.*, non-parade) event that massed thousands along 29 blocks of one avenue for a duration of 12 hours.

The police officer responsible for allocating manpower for special events estimated that the plaintiff's event, if held as scheduled, would require between 3,000 to 5,000 personnel "depending on the length of the event." He testified that he is already experiencing extreme difficulty in locating sufficient personnel for the long-scheduled West Indian Day Parade.

The need to consider all of the pertinent circumstances is made plain in this record. The First Deputy Commissioner of the Fire Department testified that holding the event as requested by the plaintiff would "pose a near catastrophic public safety risk." The area is a high density residential area posing special fire hazards and requiring more than just straightaway access for fire vehicles.

All the pertinent circumstances persuade us that the District Court exceeded the scope

of its allowable discretion in issuing an injunction that required the City to allow the plaintiff's event in precisely the dimensions that the plaintiff requested. At oral argument, we were informed that, based on current information, the plaintiff now estimates an attendance of about 50,000, which is less than the size of the crowd accommodated with a three to four block area at 125th Street at the Mandela event. The relevant circumstances make clear that if the plaintiff prefers to go ahead with an event on September 5 at the location of Malcolm X Boulevard, the duration should be limited to four hours and the number of blocks in which the event is to be held should be limited to six blocks. An event requiring street closings in a greater area and for a longer duration on this Labor Day weekend creates an unacceptable burden on already heavily committed police resources and would pose an unacceptable risk to public health and safety. In the event that more people attend than can be safely accommodated within the six-block area, the City is authorized either to divert any excess crowds to nearby sites, or, if in the judgment of responsible police officers on the scene it is preferable to extend the area of the event for two or three additional blocks along Malcolm X Boulevard, to permit such extension. The City is also authorized to maintain reasonable access along and across Malcolm X Boulevard for emergency vehicles. We expect the parties promptly to meet to discuss the precise blocks and hours for the event, within the numerical limits we have established. If agreement cannot be reached, the parties shall notify this Court by 3 p.m. Wednesday, September 2, and we will make our ruling more specific as to streets and hours.

If these limitations are unacceptable to the plaintiff, it may hold its event for the full 12 hours at Randall's Island, a location originally requested by the plaintiff, where policing needs are far less, and the limitation on access to residential streets by fire, medical, and other emergency personnel is absent. In order to accommodate the City's need to make appropriate arrangements in advance of the event, an election by the plaintiff to hold the event at Randall's Island must be communicated to the City's Corporation Counsel, in writing, by 5 p.m. on Wednesday, September 2.

The record in this case would have justified the District Court in requiring the City to issue a permit for the plaintiff's event only at Randall's Island. However, the District Court was concerned about the special relationship of the purposes of the event to the Harlem area, mindful that one of the requirements of a constitutionally valid time, place, and manner limitation is reasonable alternative channels of communication for the speaker. That consideration impelled the Court to exercise its discretion in favor of requiring the event to be held at the plaintiff's preferred site and on the plaintiff's preferred date. Whether or not we would have made the same decision, we cannot say that the Court exceeded its discretion in doing so.

We do say, however, that the Court incompletely exercised its discretion in not crafting its injunction to limit both the number of blocks involved and the duration of the event. In view of the time limitations thrust upon all of us, for which the plaintiff is largely responsible by its initiation of this lawsuit only two weeks before the date of the event it wishes to hold, we will not return this matter to the District Court for further refinement of the injunction, but instead will exercise our authority under 28 U.S.C. § 2106 to "direct the entry of such appropriate judgment, decree, or order . . . as may be just under the circumstances."

Accordingly it is hereby Ordered that the motion for a stay is denied, and the injunction is modified as set forth in this opinion.

CARDAMONE, Circuit Judge, Dissenting:

Respectfully, I dissent. This case comes before us as an emergency motion in which the City of New York seeks a stay of an injunction issued in the United States District Court for the Southern District of New York (Kaplan, J.) on August 26, 1998 that ordered the City to permit plaintiff Million Youth March, Inc. to conduct a so-called Million Youth March in Harlem on Saturday September 5, 1998 from 7:00 a.m. to 7:00 p.m. on 29 blocks of Malcolm X Blvd. from 118th Street to 147th Street.

Several observations should be made. The event is not a march, but akin to a street fair or political rally with planned speakers at various intersections. Further, the City, while conceding plaintiff's constitutional right to conduct its youth march, has strenuously objected to the date, place and time of the event for reasons of public safety, many of which have merit. And, the record reveals that the site of the event on Malcolm X Blvd. can only accommodate 130,000 people. In that connection, the City's authority to maintain access for emergency vehicles, and to Harlem Hospital, to keep intersections open to permit movement of east-west traffic and for crowd expansion space remains intact.

Further, a principal organizer of the event, plaintiff's attorney, has engaged in inflammatory rhetoric of hate quite different, for example, than the message of brotherhood delivered by Nelson Mandela for whom the City also hosted a rally. Nothing else in the record beyond the offensive rhetoric suggests the possibility of violence like that presented when the Orange Order in Northern Ireland demanded to march on the Catholic neighborhood of Drumcree. Were such violence anticipated, the "Million Youth March" would not be sanctioned by this Court.

On appeal, a preliminary injunction is reviewed for abuse of discretion. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). A preliminary injunction is justified only if the moving party has shown, first, a likelihood of irreparable harm, and second, "either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996). As to irreparable harm, the City invokes the doctrine of laches on grounds that the plaintiffs delayed for several weeks in seeking injunctive relief, but the district court found that the resulting prejudice, if any, was minimal. Because there is no abuse of discretion in this regard, I turn to the merits.

Supreme Court precedent firmly establishes that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional" on its face. *Nichols v. Village of Pelham Manor*, 974 F.Supp. 243, 250 (S.D.N.Y.1997) (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)). In the instant controversy, two sets of City regulations are called into question. First, the Street Activity Permit Office (SAPO) regulations, which govern the issuance of a permit for "a street fair, block party, [or] festival," provide that a permit may be denied "if approval of the application is not in the best interest of the community, City or general public for reasons that may include, but are not limited to, lack of good character, honesty, integrity or financial responsibility of the sponsor." 50 Rules of the City of New York (RCNY) §§ 1–03(a), 1–07(c)(4). Second, § 10–110 of the New York City Administrative Code, which governs the issuance of a permit for a parade, race, or march, provides, *inter alia*, that the police commissioner may grant special permits for "occasions of extraordinary public interest . . . for any street or public place, and for any day or hour, with the written approval of the mayor." New York, New York, Code § 10–110(a)(5). The district court was, in my view, entirely correct in holding that the SAPO regulations, whether considered alone or in conjunction with the RCNY regulations, fail to provide the "narrow, objective, and definite standards" required by *Shuttlesworth*.

In addition, the district court found that these standards failed to pass constitutional muster as applied in the instant case. In this context, a law may properly regulate the time, place and manner in which an expressive activity is conducted if the law (a) is content-neutral, (b) is narrowly tailored to serve a significant governmental interest, and (c) leaves open ample alternative channels for communication. *Olivieri v. Ward*, 766 F.2d 690, 693 (2d Cir.1985) (citing *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). Here, the district court first held the above regulations as applied were not narrowly tailored to serving the City's

interest in preserving public safety. The trial court noted the City's failure to demonstrate its inability to manage a street crowd of 100,000 to 150,000 attendants as estimated by the plaintiffs, in light of comparable events permitted by the City in the past. Second, it was not an abuse of discretion to rule that there exists no satisfactory alternative channels for communication, given the cultural significance of Harlem as it relates to the message the plaintiffs intend the event to convey to the youth in attendance as well as the surrounding community.

I join my colleagues in denying the motion to stay. But, I dissent from their modification of the injunction which they accomplish by limiting the event's duration to four hours within a six-block area of Malcolm X Blvd. I dissent from this modification for these reasons: First, the restrictions the majority places on the time and venue of the event are not narrowly tailored to the City's significant interest in public safety. *See Clark,* 468 U.S. at 293, 104 S.Ct. 3065. The City has failed to demonstrate its inability to accommodate the event were it to run for 12 hours on 29 city blocks as originally contemplated by the district court. In fact, the majority's restrictions seem counterproductive to the public safety rationale insofar as they will increase congestion and also increase the risk of confrontation. Finally, this Court is authorized to review the preliminary injunction only for abuses of discretion by the district court. *See Doran,* 422 U.S. at 913–32, 95 S.Ct. 2561. Because the district court had the same evidence before it, and in addition held an eight hour hearing, I find no error in its reasoning such as would justify substituting our judgment for the trial judge's.