**UNITED FOR PEACE AND JUSTICE, Plaintiff–Appellant,**

**v.**

**The CITY OF NEW YORK, Michael Bloomberg, Mayor of the City of New York and Raymond Kelly, Commissioner of the New York City Police Department, Defendants–Appellees.**

**Docket No. 03–7130.**

United States Court of Appeals, Second Circuit.

Motion Argued: Feb. 12, 2003.

Decided: Feb. 12, 2003.

Christopher Dunn, New York Civil Liberties Union, New York, NY, for Plaintiff–Appellant.

Scott Nathan Shorr, City of New York Law Department, New York, NY, for Defendants–Appellees.

Before: CABRANES and F.I. PARKER, Circuit Judges and KAPLAN, District Judge.*

PER CURIAM.

Pending before us is plaintiff-appellant's motion for a preliminary injunction pending appeal. The plaintiff in this case, United for Peace and Justice, sought an injunction requiring the City to issue a permit for a protest march past the United Nations headquarters on First Avenue to take place on February 15, 2003. The United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*), denied that application. *See United for Peace and Justice v. City of New York*, 243 F.Supp.2d 19 (S.D.N.Y. 2003). We are satisfied that, in doing so, it correctly set forth and applied the relevant law and, therefore, that it did not abuse its discretion. Accordingly, UPJ's motion for an injunction with respect to the proposed march past the United Nations headquarters is denied.

In the course of the proceedings below, the parties' attention turned also to the question of whether the City of New York might have been required to issue a permit for a marching protest elsewhere in the City. We note that only one route was submitted for approval and the complaint's request for injunctive relief asked only that the district court enjoin defendants from preventing the plaintiff from conducting a peaceful march on First Avenue past the United Nations as part of its February 15, 2003, anti-war event, subject to reasonable restrictions. The testimony and affidavits of the event organizers focused as well on the symbolic importance of proximity to the U.N. However, in view of the fact that the District Court discussed the alternative route issue despite the lack of such an application being made, it is an issue to which we now turn.

 It is undisputed that peaceful and orderly marching in a public street in conjunction with political protest, "falls well within the sphere of conduct protected by the First Amendment." *Gregory v. City of Chicago*, 394 U.S. 111, 112, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969). But the right to use public forums such as streets for speech and assembly is not absolute. The Supreme Court has made it clear that

> the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for the communication of the information.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

UPJ maintains that the City's decision not to offer an alternative venue for the march was content-based because the City regularly has permitted "cultural parades" with over 100,000 participants—for example, the Saint Patrick's Day Parade and the Puerto Rican Day Parade. Moreover, UPJ argues that the City's decision was not narrowly-tailored because it could have offered an alternative location in mid-town Manhattan for the march.

 The District Court held that this was not a content-based distinction, finding that the cultural parades differ in "manner" from the proposed march because

they are regular, annual events with which the NYPD has substantial experience, and for which it has been provided with a significant amount of time to plan and prepare. Ms. Leslie Cagan, a principal organizer of the proposed march, concedes that she could not provide the police department with specific information about the probable number of participants and that she has not yet provided the police with the names of volunteers who would serve as peacekeepers and marshalls for the event. Accordingly, the District Court found that the City has had insufficient time to prepare security volunteers or group leaders of the prospective marchers. It also determined that a large crowd could lead to dangerous surges as participants vie to march up front, creating a continuing risk of injury to participants and especially to children.

We find no error in the District Court's factual findings on this matter. Accordingly, we agree that the difference between the NYPD's policy with respect to cultural parades and its policy with respect to the event proposed by UPJ is a legitimate, content-neutral restriction based on time, place, and manner.

We also agree with the District Court's conclusion that "the City's decision to ban the march but permit a stationary rally is narrowly tailored to address the risks as assessed and goes no further than necessary to that end." The District Court determined that a stationary rally would enable UPJ to communicate its message at a desirable location in close proximity to the United Nations. It also noted that the rally does not limit the number of participants who may attend the event, and it concluded that the City's restrictions would not impede the UPJ's ability to convey its message to the United Nations or the world. After recognizing that, while time, place and manner restrictions must

be narrowly-tailored, they "need not be the least restrictive or least intrusive means" of regulating speech, *Ward v. Rock Against Racism,* 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the District Court concluded that the NYPD's restriction on the UPJ's ability to march did not violate its First Amendment rights to speak and assemble freely.

We agree with the District Court that nothing in the record compels the NYPD to allow UPJ to march elsewhere in the City absent specific information regarding the logistics and organization of any such march, and in light of the narrow time frame between the application and the projected march. In these circumstances, the option presented by the NYPD—namely a stationary rally in close proximity to the United Nations—is an appropriate, narrowly-tailored, time, place, and manner restriction that provides the UPJ ample opportunity to express its views.

We have held in the recent past, in a case raising some of the issues presented here, that it would be appropriate for a district court to craft restrictions on such marches "to limit both the number of blocks involved and the duration of the event." *Million Youth March, Inc. v. Safir,* 155 F.3d 124, 127 (2d Cir.1998). Similarly, it was appropriate in this case for the NYPD to limit its permit to a particular area of Manhattan (namely, the area of Dag Hammarskjold Plaza and First Avenue), thereby accommodating the stated interest of the march organizers in vigorously demonstrating their views in close proximity to the UN.

This case, and the district court's decision, are not as unusual or as unprecedented as some have suggested. In New York City, our courts are provided a steady diet of cases involving parade permits and the limitations that may or may not be imposed upon them. We are ever mindful of

our role in the preservation of our system of ordered liberty, especially in times of war. Not every regulation or governmental action designed to protect the public safety will necessarily win the imprimatur of the courts. But in the circumstances presented here, we cannot say that the District Court erred in declining to order the city to issue a permit for some unspecified alternate route.

■ We caution that, while short notice, lack of detail, administrative convenience and costs are always relevant considerations in the fact-specific inquiry required in all cases of this sort, these factors are not talismanic justifications for the denial of parade permits. Likewise, simply offering an alternative of a stationary demonstration does not end the analysis. The availability of such a demonstration may not completely serve the constitutional interest here at issue. *See, e.g., Connecticut State Federation of Teachers v. Bd. of Educ.*, 538 F.2d 471, 482 (2d Cir.1976).

We note that the District Court expressed "no view on the constitutionality of a ban or other restrictions on any . . . type of demonstration" other than that "proposed by the organizers of this event." Similarly, we do not imply that a prohibition against marching would be constitutional in circumstances other than those presented here.

For the foregoing reasons, we hold that UPJ has not demonstrated a "clear" or "substantial" likelihood that it will succeed on the merits, and we affirm the order of the District Court denying UPJ's application for a preliminary injunction.

In view of the agreement of counsel for UPJ that the appeal would be moot after Saturday, February 15, 2003, we will thereafter dismiss the appeal as moot.