Carmen **VELAZQUEZ, WEP Workers Together!, Community Service Society of New York, Inc., New York City Coalition to End Lead Poisoning, Centro Independiente De Trabajadores Agricolas, Inc., and Greater New York Labor–Religion Coalition, on behalf of all similarly situated individuals, organizations and their members; namely, individuals and organizations who are, or wish to be, represented by lawyers employed by entities receiving funds from the Legal Services Corporation, and who wish to assert legal claims as members of a class, or to benefit from some other legal advocacy activity proscribed by Pub.L. 104–208;**

**Farmworkers Legal Services of New York, Inc., on behalf of itself, and on behalf of all similarly situated not-for-profit legal services entities; namely, organizations who wish to be eligible to receive funds from the Legal Services Corporation, and who wish to be free to engage in legal advocacy activities that are proscribed by Pub.L. 104–208;**

**Lucy A. Billings, Peggy Earisman, Olive Karen Stamm, Jeanette Zelhof, Elisabeth Benjamin, Jill Ann Boskey, and Lauren Shapiro, on behalf of each, and on behalf of all similarly situated individuals; namely, attorneys employed or formerly employed by enti-**

ties receiving funds from the Legal Services Corporation who wish to be free to represent indigent individuals in class actions, and to engage in other attorney-client activities that are proscribed by Pub.L. 104–208;

and

Andrew J. Connick, Councilmember C. Virginia Fields, Councilmember Guillermo Linares, Councilmember Stanley Michels, Councilmember Adam Clayton Powell, IV, Senator Lawrence Seabrook, and Assemblyman Scott M. Stringer, on behalf of themselves and all similarly situated individuals; namely, individuals who have provided public or private non-federal funding to entities that also receive funds from the Legal Services Corporation, and who wish these funds to be used for legal advocacy activities that are proscribed by Pub.L. 104–208, Plaintiffs,

v.

**LEGAL SERVICES CORPORATION,**
Defendant.

David F. Dobbins, New York Foundation, Lisa E. Cleary, David W. Ichel, David G. Keyko, Mfy Legal Services, Inc., Brooklyn Legal Service Corp. B, Legal Services for New York City, Bronx Legal Services, Inc on their own behalf and on behalf of their clients, Plaintiffs,

v.

Legal Services Corporation, Defendant.

Nos. 97–CV–182, 01–CV–8371.

United States District Court,
E.D. New York.

Feb. 22, 2005.

As Corrected Feb. 22, 2005.

Burt Neuborne, David S. Udell, Laura Abel, The Brennan Center for Justice, New York City, Peter M. Fishbein, Michael F. Bahler, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Plaintiffs.

Alan Levine, Stephen L. Ascher, Anne Nacinovich, Kronish, Lieb, Weiner & Hellman, New York City, for Defendant Legal Services Corp.

Joseph W. Lobue, John Tyler, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Intervenor-Defendant U.S.

## SUPPLEMENTAL MEMORANDUM AND ORDER

BLOCK, District Judge.

### I.

In its December 20, 2004 Memorandum & Order ("M & O") in the above-captioned actions granting, in part, plaintiffs' motion for a preliminary injunction, the Court invited the parties to "notify the Court ... whether there are any viable claims that remain and, if not, whether there is any reason why finality should not now be achieved by converting the preliminary injunction into a permanent injunction." *Velazquez v. Legal Services Corp.,* 349 F.Supp.2d 566, 613 n. 26 (E.D.N.Y.2004). Having reviewed the parties' responses, the Court will not enter a permanent injunction at this time; moreover, the Court modifies its M & O in one respect.

In their response to the Court's invitation, plaintiffs conditioned their consent to entry of a permanent injunction on the Court eliminating "provisions of the [M & O] that some might construe as" imposing "restrictions on the plaintiffs beyond those that ... LSC already imposes." Letter from Burt Neuborne on behalf of plaintiffs (Jan. 20, 2005) at 1. Specifically, plaintiffs took issue with provisions requiring (1) that LSC-grantees and their affiliates maintain separate rooms for areas "open to the public (for example, reception areas and conference rooms to meet with clients or to conduct depositions or interview witnesses) ... [because] permitting client contact with LSC and non-LSC clients in the same room, albeit at different times, is bound to create public confusion, and should not be countenanced," *Velazquez,* 349 F.Supp.2d at 612, and (2) that "lawyers handling a case containing both restricted and non-restricted components must identify themselves as lawyers for the affiliate and charge all their time and costs to the affiliate for the duration of the case." *Id.*

With respect to the former provision, plaintiffs contended that "[r]equiring two sets of waiting areas and conference rooms ... imposes an unnecessary and unjustifiable burden on the day-to-day activities of a legal services office."[1] Pls.'

---

1. In support of their argument that requiring LSC grantees and their affiliates to maintain separate public areas imposed an unnecessary and unjustifiable burden, plaintiffs submitted declarations from the executive directors of plaintiffs Legal Services of New York City and Farmworker Legal Services of New York, which contained new factual allegations not previously presented to the Court. *See* Decl. of Andrew Scherer; Declaration of James F. Schmidt.

Mem. Regarding Remaining Claims at 3. With respect to the latter provision, plaintiffs contended that it could be construed as prohibiting activities permitted under LSC's regulations, for example, "representing a client until he or she becomes ineligible"; "representing a case in which a sudden need later arises to seek a fee award"; and "representing a client in a class action in circumstances in which LSC's regulations authorize representation pursuant to the class action restriction." Letter from Neuborne at 1–2.

Prior to plaintiffs' submission, defendant LSC expressed its belief that the M & O "fully resolved all outstanding issues, and that plaintiffs do not have any viable claims remaining"; accordingly, it had no objection to the Court converting its preliminary injunction into a permanent injunction. Letter from Stephen Ascher on behalf of LSC (Jan. 19, 2005) at 1. LSC also noted that it was simultaneously filing a notice of appeal. *See id.; see also* [LSC's] Notice of Appeal (Jan. 19, 2005). After receiving plaintiffs' submission, LSC wrote that the issues plaintiffs raised were based on new facts that were not properly before the Court, and that their concerns "appear[ed] to be based on the ... assumption that LSC will apply the Court's ruling not only unconstitutionally, but in bad faith." Letter from Stephen L. Ascher on behalf of LSC (Jan. 26, 2005) at 1.

Defendant-intervener United States ("Government") argued that plaintiffs' request to eliminate the requirement that LSC grantees and their affiliates maintain separate public areas "would have the Court endorse a subterfuge that would allow [grantees] to feign compliance with the LSC statute by engaging in restricted activities through 'affiliates' that, in all meaningful respects, are precisely the same entity." *See* [Government's] Mem. Opp. Pls.' Request for Perm. Inj. at 1. With respect to the requirement that in cases with restricted components, lawyers identify themselves as working for the affiliate and charge their time and costs to the affiliate, the Government argued that

> the Court can simply clarify that this particular requirement applies solely to cases that contain "restricted" components as described in the statute and the LSC's implementing regulation. Thus, for example, a case involving a client who is currently eligible (but who may become ineligible) would contain a "restricted" component only if and when the client becomes ineligible.

*Id.* at 4. Despite the parties' disagreement, the Government contended that "there is no sound reason for the Court to delay entry of judgment in this protracted litigation" by converting its preliminary injunction into a permanent injunction. *Id.* at 1 n. 1.

In subsequent informal telephone conferences with the parties, the Court commented that after reviewing the parties' post-M & O submissions, it believed that the provision of its M & O requiring that "lawyers handling a case containing both restricted and non-restricted components must identify themselves as lawyers for the affiliate and charge all their time and costs to the affiliate for the duration of the case," lacked clarity and was not in keeping with the conceptual bases for its M & O. Accordingly, it offered the parties an opportunity to collectively propose an appropriate modification, without prejudice. On February 17, 2005, counsel for LSC contacted chambers and informed the Court that the parties had not been able to do so. On that same day, the Government also filed a notice of appeal, *see* [Government's] Notice of Appeal (Feb. 17, 2005), and plaintiffs filed a notice of cross-appeal. *See* [Plaintiffs'] Notice of Cross–Appeal (Feb. 17, 2005).

## II

With respect to plaintiffs' argument that the Court should eliminate the requirement that LSC-grantees and their affiliates maintain separate rooms for areas open to the public, the Court notes that in crafting its injunction, it "agree[d] with LSC that some degree of separate physical premises [was] justified to avoid the appearance of endorsement[.]" *Velazquez*, 349 F.Supp.2d at 612. It therefore concluded that drawing a distinction between the public and non-public aspects of legal representation would be a sound conceptual dichotomy in balancing the parties' respective interests under the undue burden test; to do otherwise would risk obfuscating all lines of physical separateness, thereby unduly compromising the Government's legitimate interest, albeit of limited weight, in preventing the appearance of the endorsement of restricted activities.

Accordingly, the Court declines the plaintiffs' invitation to modify its M & O based on the current record to permit the same facilities to be used for public and nonpublic purposes as a condition for serving a quietus to this litigation so that a permanent injunction may now be entered. In doing so, it notes that many of the facts which plaintiffs rely on in support of their contention are not the subject of the parties' stipulated facts and, if plaintiffs choose to pursue their litigation, they will have the burden of establishing these facts.

Moreover, since all parties have appealed, and "[t]hose portions of a decree that are disapproved of may be modified by an appellate court," *Olivieri v. Ward*, 801 F.2d 602, 607–08 (2d Cir.1986), the circuit court will undoubtedly have its own take on the nature of the undue-burden test and its application to the present case, given its unique and unprecedented aspects, which will guide the Court in the event that the circuit court modifies the preliminary injunction or otherwise aids it in the ultimate disposition of the litigation. *See id.* (modifying injunction specifying terms under which demonstrators could assemble on sidewalk in front of St. Patrick's Cathedral); *see also Million Youth March, Inc. v. Safir*, 155 F.3d 124, 127 (2d Cir.1998) (affirming and modifying a preliminary injunction requiring the City to issue a parade permit to an organization seeking to hold a public event).

## III

With respect to that aspect of the M & O requiring that "lawyers handling a case containing both restricted and nonrestricted components must identify themselves for the affiliate and charge all their time and costs to the affiliate for the duration of the case," the Court believes that clarification is necessary because this suggests that the same lawyer can handle a case that contains both restricted and nonrestricted components, or continue to handle a case for a client who initially qualifies for retention by an LSC grantee but whose subsequent change in status disqualifies the LSC grantee lawyer from continued retention; this was not the Court's intent. For example, in that latter regard, LSC regulations appropriately require that when "a client who was an eligible alien becomes ineligible through a change in circumstances, continued representation is prohibited ... and a recipient must discontinue representation consistent with the applicable rules of professional responsibility." 45 C.F.R. § 1626.9. Similarly, if "a client becomes incarcerated after litigation has commenced, the recipient must use its best efforts to withdraw promptly from the litigation, unless the period of incarceration is anticipated to be brief and the litigation is likely to continue beyond the period of incarceration." 45 C.F.R. § 1637.4. Despite the parties' pending appeals, the Court retains jurisdiction

to clarify its injunction. *See, e.g., Meinhold v. United States Dep't of Def.*, 34 F.3d 1469, 1480 n. 14 (9th Cir.1994) (holding that modification of preliminary injunction during pendency of appeal was proper to clarify injunction).

While requiring an attorney to be identified as an attorney for the LSC grantee or affiliate for a given case is sufficient to serve the Government's interest in preventing the appearance of endorsement, the same cannot be said if the same attorney were to render legal services for restricted and non-restricted aspects of *the same case;* the risk of public confusion is too great and cannot in the Court's view be effectively addressed by disclaimers.

Accordingly, the Court clarifies its preliminary injunction by striking the following language:

> However, lawyers handling a case containing both restricted and non-restricted components must identify themselves as lawyers for the affiliate and charge all their time and costs to the affiliate for the duration of the case

and replacing it with the following:

> If at the time a lawyer commences representation of a client, the representation does not involve a restricted component, the lawyer may identify him or herself as a lawyer for either the LSC grantee or affiliate, and must charge all time and costs to the entity so identified. If at the time a lawyer commences representation of a client, the representation involves any restricted component, the lawyer must identify him or herself as a lawyer for the affiliate and charge all time and costs to the affiliate. If in the course of representation for which the lawyer has initially been identified as a lawyer for the LSC grantee, the client becomes ineligible or the case otherwise comes to involve a restricted component, the lawyer must withdraw from representation in accordance with

LSC's regulations. Any other lawyer taking over the representation on behalf of an affiliate must identify him or herself as a lawyer for the affiliate and must from the time he or she takes over representation charge all time and costs to the affiliate.

## IV

The need for this Supplemental Memorandum and Order reflects the reality that the Court cannot, and should not, envision all the situations that may arise in the relationship between the parties in attending to the formation and management of LSC affiliates and to the relationship and interaction between LSC grantees and their affiliates. Although the Court has jurisdiction to supervise the conduct of the parties since "an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief," *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 5 L.Ed.2d 349 (1994), the high level of the professionalism exhibited by the parties' attorneys throughout this litigation suggests that this will not be necessary and that they will be able to resolve any particulars that may divide them within the framework and spirit of the Court's injunctive guidelines.

## CONCLUSION

The Court declines to convert its preliminary injunction into a permanent injunction. The Court's preliminary injunction is modified in accordance with this Memorandum and Order.

**SO ORDERED.**